PEOPLE v KAUFMAN

Docket No. 109914. Decided May 19, 1998. On application by the people
for leave to appeal, the Supreme Court, in lieu of granting leave,
reversed in part the judgment of the Court of Appeals, reinstated
the defendant's conviction, and remanded to the trial court for
resentencing.

James R. Kaufman was charged in the Barry Circuit Court with manu-
facturing marijuana and was notified that he was subject to an
enhanced sentence as a prior drug offender and as an habitual
offender. The court, Richard M. Shuster, J., denied the defendant's
motion to quash the information on the basis of reviewing the pre-
liminary examination transcript and the police report. Thereafter,
the defendant was convicted by a jury of the charged offense, and
both sentence enhancement provisions were employed. The Court
of Appeals, HOOD, P.J., and T. S. EVELAND, J. (SAAD, J., dissenting),
reversed in an unpublished opinion per curiam, and remanded the
case for an evidentiary hearing on the defendant's motion to sup-
press the evidence obtained in the search of his mother's home.
The Court found *People v Talley*, 410 Mich 378 (1981), controlling,
and held that the circuit court erred in deciding the defendant's
motion to suppress solely on the basis of the preliminary examina-
tion transcript. It further found that the defendant's sentence
exceeded the maximum provided by law (Docket No. 183091). The
people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT, and
Justices BRICKLEY, BOYLE, WEAVER, and TAYLOR, the Supreme Court
*held*:

Counsel may agree to have a motion to suppress evidence
decided on the basis of the record of the preliminary examination.

Under MCR 6.110(D), a ruling on a motion to exclude evidence
may be premised on the record of a prior evidentiary hearing. This
approach vests discretion where it belongs—with the lawyers who
are trying the case. Subject to the authority of the trial judge, it is
the lawyers who are responsible for the introduction of evidence
and the presentation of motions. An attorney is to employ profes-
sional judgment in deciding whether additional proofs are neces-
sary or desirable from the standpoint of the client. In this case, the

lawyers chose to have the motion decided on the basis of the pre-
liminary examination transcript and the police report. While that
approach is inconsistent with a portion of what was said in *Talley*,
it accords with broader principles regarding the respective roles of
defense counsel, the prosecuting attorney, and the court, and it is
specifically authorized by MCR 6.110(D). There was no error in the
manner in which the circuit court proceeded.

Reversed in part and remanded.

Justices CAVANAGH and KELLY concurred only in the result.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Dale A. Crowley*, Prosecuting Attorney, and *Michael E. Moody*, Assistant Attorney General, for the plaintiff-appellant.

*Patrick K. Ehlmann* for the defendant-appellee.

PER CURIAM. The defendant was convicted of manufacturing marijuana. The Court of Appeals reversed and remanded for an evidentiary hearing regarding the defendant's motion to quash evidence obtained in the search of his mother's home. We reverse in part the judgment of the Court of Appeals and reinstate the defendant's conviction.

I

On May 22, 1994, State Police Trooper Terry Klotz received a telephone call, informing him that a woman named Molly Westrate had approximately two hundred marijuana plants growing in her basement. The caller also stated that Ms. Westrate's son, James R. Kaufman, had buried in the backyard a stolen gun that might have been used in an armed robbery.

Trooper Klotz discussed the call with Trooper Michael Herendeen. The two decided that they did not have enough information to satisfy the probable-cause requirement for obtaining a search warrant.

Troopers Klotz and Herendeen nevertheless decided to pay a visit to Ms. Westrate's home. In uniform and driving separate patrol cars, they arrived about an hour after Trooper Klotz had received the telephone call. Testifying on direct examination at the preliminary examination, he explained:

*Q.* Okay. What did you do when you arrived?

*A.* Approached the door, I knocked on the door, didn't get any response. Waited, I don't know, 20 seconds or so. I rang the doorbell and then—and then I heard some movement and some voices in the back of the house, but no one was coming to the door at that time. I could hear 'em like in the kitchen area possibly. I wasn't sure. Then I knocked again at which time a female subject came to the door which was Molly Westrate who I'm familiar with.

*Q.* Okay.

*A.* I advised her, I said this—I told her what my name was and I told her—Mike Herendeen, we're both from the state police in Hastings, we were in uniform at the time. I advised her that we were there to get the marijuana out of her basement.

*Q.* And what was her response?

*A.* And she said, "Excuse me?" and I could see the color changing in her face a little bit and she got—and just kind of stared at me and I said—I repeated myself, "We're here to get the marijuana out of your basement." At that point she turned around and started to walk away from the door. And I hollered, I said, "Molly," and she came back to the door again. I said, "The marijuana's in your basement, isn't it?" and she said yes it is and we allowed ourselves in— she—Well, she said come on in, she opened the door.

*Q.* Okay. And what happened once you got in the house?

*A.* Went into the kitchen area, both myself and Mike Herendeen asked her if anyone else was in the house. She said her husband was there as well as Jim Kaufman. Trooper Herendeen went down into the basement at that time.

Trooper Herendeen testified at the preliminary examination that Ms. Westrate "let us in" and that he soon found himself looking around the basement. He found "nothing really out of the ordinary" until he came to a locked door.

Q. And what did you do?

A. I went to the foot of the stairs and I—I either called her name Molly, or I called Mrs. Westrate. I don't remember how I addressed her, and she appeared [sic] top of the steps and came down. I told her I would need a key to the—to the locked door and she like—seemed like she patted her—what she was wearing as if feeling for a key and then says I don't have it, or the key's upstairs, or something like that, and she turned around and went back up the steps and a few moments later Jim Kaufman came down and he had the key and he unlocked the door to the locked room.

Q. And what did you find?

A. There was a large quantity of marijuana growing in there. There was what we call—we refer to them as grow lights. There was one very large one and then one smaller one. They were on and there were some fans going in the room. It was—what I have experienced in the past as a growing—as the initial growing operation for—for marijuana plants.

The police found 594 plants growing in Styrofoam cups.

The defendant was charged with manufacturing marijuana, under the statutory language in effect at that time. MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c), as amended by 1989 PA 143.[1]

The preliminary examination took place in June 1994. The troopers gave the testimony noted above,

---

[1] The current language is found in MCL 333.7401(2)(d); MSA 14.15(7401)(2)(d), as amended by 1996 PA 249.

and the district court concluded that there was sufficient evidence to bind over the defendant on the charged offense.

At a September 1994 pretrial hearing, the defendant indicated his intention to file a motion to quash the information. Though the file contains no such written motion, the circuit court considered the matter at an October 1994 hearing—defense counsel explained that "it's going to be done orally. There's nothing formal filed on it."

At the hearing, defense counsel discussed the testimony found in the transcript of the preliminary examination, and invited the court to "just kind of skim through that after you hear my remarks . . . ." Though framed as a motion to quash, counsel's presentation focused on his belief that there had been an illegal search and seizure. Counsel concluded:

> So I'd like you to read the complete transcript, which is rather short on this thing and with a view in mind of dismissing this case at this time, your Honor.

The assistant prosecutor likewise based his remarks on the contents of the preliminary examination transcript.

A moment later, defense counsel indicated that he had "no objection if the Court would like to read the police report . . . ." The assistant prosecutor agreed to that suggestion.

After the circuit court read the transcript of the preliminary examination and the police report, it denied the motion to quash. The ruling focused on whether the evidence adduced at the examination was sufficient to warrant a bindover. The court did

not address counsel's claim that the entry and search of the home had been illegal.

A two-day jury trial took place in late November 1994. At the conclusion of the prosecutor's proofs, defense counsel offered another oral motion:

> I'd also like to move for a directed verdict based on the fact that the search was illegal. I realize the Court ruled on this at a motion at a prior time. But based on the proofs that you've heard today, I think the case should be dismissed.

The court denied the motion for directed verdict, saying that the prosecution had introduced "strong" evidence of guilt. The court continued:

> And with regard to the question of the legality of the search and seizure, the Court did previously decide that and—and even reconsidering it, which I do on a motion such as this, I am satisfied that the Court's decision was correct and I would reaffirm the decision that the search and seizure was appropriate and did not violate the rights of—of Mr. Kaufman.

The defendant rested without presenting proofs. Following closing argument and instructions, the jury found the defendant guilty of the charged offense.

After denying a motion to remand,[2] the Court of Appeals reversed.[3] The Court ordered that the case be remanded for an evidentiary hearing on the defendant's motion to suppress the evidence.[4]

---

[2] Order entered December 5, 1995, reh den February 23, 1996 (Docket No. 183091).

[3] Unpublished opinion per curiam, issued April 4, 1997 (Docket No. 183091).

[4] The Court of Appeals also ordered that the defendant be resentenced.

The prosecutor has applied to this Court for leave to appeal.

## II

### A

The Court of Appeals found that the circuit court "erred in deciding defendant's motion to suppress solely on the basis of the preliminary examination transcript." The Court of Appeals based this holding on *People v Talley*, 410 Mich 378; 301 NW2d 809 (1981).[5]

In *Talley*, this Court faced two related issues:

> The first is whether the trial court, relying solely on the preliminary examination transcript, correctly quashed the information against the defendant on the theory that the testimony of the sole witness before the examining magistrate was "inherently incredible" . . . . The second issue is whether the Court of Appeals, though doubtful of the validity of the trial court's quashing of the information, correctly affirmed the trial court on the basis of defendant's Fourth Amendment illegal seizure argument, although the trial court never looked beyond the record of the preliminary examination and the suppression argument had not been the articulated basis of the trial court's decision to quash. [410 Mich 381-382.]

After holding that the magistrate in *Talley* did not abuse his discretion in finding probable cause to bind the defendant over on the charged offense, we turned to the issue concerning the seizure of evidence:

---

[5] The discussion in *Talley* was noted in *People v Bloyd*, 416 Mich 538, 542, n 2; 331 NW2d 447 (1982), and *People v Nash*, 418 Mich 196, 202, n 1; 341 NW2d 439 (1983) (opinion of BRICKLEY, J.).

Regarding the Court of Appeals affirmance of the trial court due to its own determination of the unconstitutionality of the seizure of the evidence, we hold such determination to have been misdirected since the pretrial hearing on defendant's motion was not only devoid of any relevant discussion or consideration relating to the existence of probable cause to seize the evidence, but more particularly was made on the basis of the preliminary hearing transcript and not on a full evidentiary hearing. We specifically disapprove of the practice of relying exclusively on preliminary examination transcripts in the conduct of suppression hearings. Accordingly, in lieu of granting leave to appeal, and pursuant to GCR 1963, 853.2(4), we reverse the judgment of the trial court and vacate the judgment of the Court of Appeals and remand the matter to the trial court for the holding of a de novo evidentiary hearing to resolve the issue of whether the arresting officers had probable cause to seize the evidence. [410 Mich 382.]

## Later in *Talley*, we reiterated the point:

We recognize that it has often been the practice of our trial courts to rely exclusively on preliminary examination transcripts in ruling on motions to suppress. This, of course, meant that appellate courts were also limited to the preliminary examination transcripts in passing on search and seizure issues since testimony later taken on the trial, amplifying the circumstances of the search or seizure, cannot be considered. *People v Miller*, 245 Mich 115, 117; 222 NW 151 (1928). See, e.g., *People v Zeigler*, 358 Mich 355, 359; 100 NW2d 456 (1960); *People v Kaigler*, 368 Mich 281, 297-299; 118 NW2d 406 (1962); *People v Miller*, 26 Mich App 665, 667; 182 NW2d 772 (1970). Today we specifically prohibit this practice in order to promote a more thorough exposition of the events surrounding a contested search or seizure. This, we hope, will aid the trial courts as well as the appellate courts in drawing the difficult line between the constitutionally permissible search or seizure and the constitutionally impermissible one. [410 Mich 390, n 3.]

However, this Court was careful to note that "[t]he issue of whether opposing counsel may stipulate to the trial court's sole reliance on a preliminary examination transcript in passing on a motion to suppress evidence is not before us, and we therefore do not consider it." 410 Mich 392, n 4.

B

As indicated, the Court of Appeals relied on *Talley* in concluding that the circuit court "improperly addressed the motion." Acknowledging that "[t]here are factual differences between the instant case and *Talley*," the Court of Appeals said that it nevertheless believed *Talley* to be controlling. "Accordingly, the trial court erred in deciding defendant's motion to suppress solely on the basis of the preliminary examination transcript."[6]

Judge HENRY WILLIAM SAAD dissented on this point, characterizing *Talley* as "inapposite." He added that, "because the uncontroverted facts clearly establish uncoerced consent to search the premises, the trial court properly refused to suppress the evi-

---

[6] The first paragraph of the Court of Appeals opinion ends, "We reverse and remand." The final paragraph says, "Reversed and remanded for an evidentiary hearing on defendant's motion to suppress the evidence. We do not retain jurisdiction." The meaning of the word "reverse" in this context is not entirely clear. If the Court of Appeals has reversed the defendant's conviction, then presumably a new trial would be in order. However, if the motion to suppress is denied on remand, it is not clear why a new trial would then be necessary. If the motion to suppress is granted on remand, then the prosecutor could theoretically go forward without the suppressed evidence, though that seems unlikely on this record. Perhaps the Court of Appeals means that the denial of the motion to quash (or to suppress) is reversed. In any event, we note that the legend "Reversed" sometimes is insufficient guidance regarding the path a case is to follow on remand.

dence . . . ." Judge SAAD would have affirmed the defendant's conviction.

C

The question reserved by this Court in *Talley*—whether parties may stipulate to the use of a preliminary examination transcript to resolve a motion to suppress—was answered by this Court in 1989, when we adopted MCR 6.110(D). That subrule provides:

> If, during the preliminary examination, the court determines that evidence being offered is excludable, it must, on motion or objection, exclude the evidence. If, however, there has been a preliminary showing that the evidence is admissible, the court need not hold a separate evidentiary hearing on the question of whether the evidence should be excluded. The decision to admit or exclude evidence, with or without an evidentiary hearing, does not preclude a party from moving for and obtaining a determination of the question in the trial court on the basis of
>
> (1) a prior evidentiary hearing, or
>
> (2) a prior evidentiary hearing supplemented with a hearing before the trial court, or
>
> (3) if there was no prior evidentiary hearing, a new evidentiary hearing.

To date, no appellate decision has addressed the relationship between this rule and *Talley*. However, we take this occasion to observe the court rule's specific statement that a ruling on a motion to exclude evidence may be premised on the record of a prior evidentiary hearing.

This approach vests discretion where it belongs—with the lawyers who are trying the case. Subject to the authority of the trial judge, it is the lawyers who are responsible for the introduction of evidence and the presentation of motions. An attorney is to employ professional judgment in deciding whether additional

proofs are necessary or desirable from the standpoint of the client. Certainly, there are cases in which further testimony would be harmful to the defendant's interests, and that determination is normally reserved for defense counsel.[7]

As indicated, the lawyers in this case chose to have the motion decided on the basis of the preliminary examination transcript and the police report.[8] While that approach is inconsistent with a portion of what was said in the 1981 *Talley* decision, it accords with broader principles regarding the respective roles of defense counsel, the prosecuting attorney, and the court. And it is specifically authorized by MCR 6.110(D).

We see no error in the manner in which the circuit court proceeded. Accordingly, we overrule *Talley* insofar as it has been understood to mean that counsel cannot agree to have a motion to suppress decided on the basis of the record of the preliminary examination.

For these reasons, we reverse in part the judgment of the Court of Appeals and reinstate the defendant's conviction.[9] MCR 7.302(F)(1).

---

[7] Concurring in *Talley*, Justice LEVIN expressed concern regarding the ability of lawyers to withstand judicial pressure to shortcut the necessary proceedings. 410 Mich 395. We are aware of the constraints placed on judges and lawyers of busy courts, but we are confident that properly conducted proceedings will always be the rule rather than the exception.

[8] In his brief to this Court, the defendant says that the agreement in this case (counsel inviting the court to "just kind of skim through" the transcript "with a view in mind of dismissing this case") is "not the kind of stipulation the *Talley* court had in mind." We disagree. Though inartfully phrased, counsel's request was clear.

[9] In all other respects, we deny leave to appeal. The case is therefore remanded to the circuit court for the resentencing ordered by the Court of Appeals.

MALLETT, C.J., and BRICKLEY, BOYLE, WEAVER, and TAYLOR, JJ., concurred.

CAVANAGH and KELLY, JJ., concurred only in the result.