Kelly, J.
(dissenting). I join Justice Cavanagh dissenting in the overruling of Haske v Transport Leasing, Inc.[1] I write separately to point out that the majority’s pronouncement on the respect to be *177 accorded the precedent of this Court is at best misleading.
I. THE MAJORITY AGAIN DISDAINS PRECEDENT
Today the majority once again discards a prior decision and replaces it with its preferred interpretation of the law.[2] In announcing its new vision of disability law, it refers to its recent pronouncements about the value of precedent in Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000), and Robertson v DaimlerChrysler Corp, 465 Mich 732; 641 NW2d 567 (2002). However, the sheer volume of this majority’s decisions overturning precedent in the past four years raises serious questions about the degree to which the majority values the principle of stare decisis. Time after time, established law has been discarded on the basis that it was “wrongly decided.”[3] It is an amazement to me how frequently the members of this *178 majority have found that esteemed justices who came before them simply misunderstood the law.[4]
In the five-year period from 1993 through 1997, there were approximately twelve cases in which precedent was overturned by this Court.[5] In the five-year period from 1998 through 2002, at least twenty-two cases were overturned.[6] However, the number of dispositions went down.[7]
The test for overturning precedent articulated in Robinson, and again in Robertson includes two *179 prongs: The first is whether the earlier decision was wrongly decided. The majority has ruled Haske was wrongly decided.[8]
The second Robinson prong is whether overruling the precedent of this Court would work an undue hardship on the basis of reliance interests. In considering that question, the majority labels a worker’s reliance on a disability determination under Haske an illegitimate and insignificant expectation. Ante at 162-163. It has apparently decided that the Haske decision strayed so far into error that no one should ever have relied on it. It seems to assume that even those having no legal education can and do distinguish *180 between which court precedent should be followed and which should not.
Contrary to the majority’s assertions, I do not consider stare decisis a conclusive barrier to change. The majority’s effort challenging me to explain some disagreement with Robinson would be better spent explaining the facility with which it excuses itself from exercising the judicial restraint Robinson embraces.
Stare decisis has long been venerated in the law and with good reason. Adherence to this doctrine promotes the evenhanded, predictable, and consistent development of legal principles and contributes to the integrity of the judicial process, both actual and perceived. Robinson, supra at 463, n 21, citing Hohn v United States, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). It is a bedrock principle. When a Court pays no more than lip service to it, the basic integrity of the legal system itself is shaken.
II. HASKE WAS NOT WRONGLY DECIDED
Haske was correctly decided. The definition of disability that it adopted is supported by the fact that the statute treats “disability” and “wage loss” as separate concepts. Examining the language of MCL 418.301(4), one finds that the first sentence defines disability. The second makes clear that it cannot be presumed that one has suffered a wage loss merely because one has become disabled. Of course, that is because one may be disabled but not suffer a wage loss, hence, not be qualified for benefits.
The majority’s new definition of disability is: an incapacity after work-related injury or illness to earn *181 maximum wages in work for which the claimant is qualified and trained. As a practical matter, this definition means disability is an incapacity after work-related injury or illness to earn the same or greater wages in work for which the claimant is qualified and trained.
The starting point in analyzing this is the statutory expression “wage earning capacity.” The majority attempts to convince that a distinction exists between “wages earned” and “wage earning capacity.” In truth, capacity to earn wages and wages earned will rarely differ. This is illustrated by the fact that, when applying its definition to Charles Sington, the majority assumes they are the same. Ante at 165. Also, it cites with approval Justice Weaver’s words: “the most basic interpretation of ‘wage earning capacity’ is that it describes an employee’s ability to earn wages.” Ante at 159.
The majority provides no persuasive examples how it could be that an employee would be earning at under capacity if not disabled. By definition, normally, what the employee earns is what the job will pay at any given time. Hence, “wage earning capacity” and “wages earned” are, practically speaking, synonymous. It follows, then that, as the majority reads it, the first sentence in § 301(4) contradicts the second. It reads: “The establishment of disability does not create a presumption of wage loss.”
If one must prove a wage loss to make out a disability,. the second sentence of § 301(4) is rendered nugatory. If one cannot be disabled absent a wage loss, the establishment of a disability relies on a wage loss. The majority confirms this by quoting with approval from Pulley to the effect that “the wages *182 earned” are one of the “complex of fact issues” used to determine wage earning capacity. Ante at 157. Pulley v Detroit Engineering & Machine Co, 378 Mich 418, 423; 145 NW2d 40 (1966). Of course, Haske disagreed with Pulley.
The Haske decision is based on the proposition that § 301(4), properly defined, treats “disability” and “wage loss” as distinct concepts. Defining a disability as the majority does, as a loss of capacity to earn maximum wages in one’s field, when there can be no presumption of a wage loss in the definition, is nonsense.
The majority has defined “earning capacity” using a rigid textualist approach to statutory interpretation (and, as I have pointed out, it makes no meaningful distinction from “wages earned”). However, the statutory expression is not “earning capacity.” Rather, it is “wage earning capacity.”
A plain meaning interpretation of that expression is that “wage earning” is an expression akin to “wage earner,” which is defined as “a person who works for wages.” Random House Webster’s College Dictionary (1995). Hence “wage earning capacity” means “the capacity of a person who works for wages.” Using that, the proper interpretation of the first sentence of § 301(4) becomes “disability is a limitation after work-related injury or illness in the capacity of a person who works for wages in work for which the person is qualified and trained.” Then, the second sentence of §301(4), “[t]he establishment of disability does not create a presumption of wage loss,” is not rendered nugatory or contradictory. Also, the holding in Haske is shown to be correct. See Haske at 653-654 and ante at 176 (Cavanagh, J.).
*183 Even if “wage earning capacity” were defined as if it read “earning capacity,” the majority’s definition is off the mark. Black’s Law Dictionary (6th ed) defines “earning capacity,” inter alia, as the “Fitness, readiness and willingness to work, considered in connection with opportunity to work.” The emphasis is on capacity to perform the work. Using that, the proper interpretation of the first sentence of § 301(4) becomes “disability is a limitation after work-related injury or illness in the fitness of an employee to work for wages in work for which the person is qualified and trained.” As with my earlier analysis, the proper definition of disability focuses on a limitation in the capacity to perform the work, not on a limitation in the capacity to earn wages, as the majority insists.
The majority’s opinion is a study in confusion in other respects, in addition to its reading of § 301(4). For example, it correctly recognizes that a prerequisite to being considered a participant in reasonable employment under MCL 418.301(5) is a determination that the employee has suffered a disability under § 301(4). Ante at 148-149. However, later it states that, in order to determine whether plaintiff was disabled after his left shoulder injury and before his stroke, the WCAC must inquire whether the work he was doing then was reasonable employment. Ante at 164.
It concludes, “if defendant . . . would not have accommodated plaintiff’s injury, except for it being work related, that would be indicative of a limitation in wage earning capacity.” Ante at 166, n 12. Hence, the fact that the employee obtained reasonable employment under § 301(5) is a factor to be used to determine if the employee was disabled.
*184 m. CONCLUSION
The majority’s reading of MCL 418.301(4) is incorrect. It creates contradictions between the definition of disability and other parts of the statute. Also, the majority opinion is internally contradictory.
Haske accurately interpreted the statute. The majority’s rationale for overturning it gives no deference to precedent. It simply replaces its interpretation of the first sentence of § 301(4) with the interpretation of a different group of justices.
Appellate courts, in the normal course of their work, are called upon continuously to reevaluate the lasting vigor of prior courts’ binding opinions. Of necessity, some must be found to be no longer valid because of subsequent legislative alterations of the law or changing customs and practices unforeseen by an earlier court. Very occasionally, a prior decision is found to work unexpected hardship. And rarely, a drastic error may be shown to have been made by a prior court in its reasoning or reading of a statute.[9]
So it is that, in the history of this and of the vast majority of supreme courts across the land, overrulings of precedent are infrequent. Yet, quite the opposite is true of the present Michigan Supreme Court. It is for that reason that, the majority’s pronouncements to the contrary notwithstanding, one may wonder whether reasoned adherence to stare decisis may properly be considered a policy of this Court.
*185 The decision of the Court of Appeals should be affirmed.

 455 Mich 628; 566 NW2d 896 (1997). The Michigan Reports erroneously failed to show me as “not participating” in the companion case to Haske. To correct that, I should be listed as not participating in Bailey v Leoni Twp (After Remand) decided sub nom Haske v Transport Leasing, Inc.

 See, e.g., People v Hardiman, 466 Mich 417; 646 NW2d 158 (2002); People v Cornell, 466 Mich 335; 646 NW2d 127 (2002); Koontz v Ameritech Services, Inc, 466 Mich 304; 645 NW2d 34 (2002); Robertson v Daimler-Chrysler Cotp, 465 Mich 732; 641 NW2d 567 (2002); Pohutski v City of Allen Park, 465 Mich 675; 641 NW2d 219 (2002); Hanson v Mecosta Co Rd Comm’rs, 465 Mich 492; 638 NW2d 396 (2002); Brown v Genesee Co Bd of Comm’rs, 464 Mich 430; 628 NW2d 471 (2001); People v Glass, 464 Mich 266; 627 NW2d 261 (2001); Nawrocki v Macomb Co Rd Comm, 463 Mich 143; 615 NW2d 702 (2000); Mudel v Great Atlantic & Pacific Tea Co, 462 Mich 691; 614 NW2d 607 (2000); Stitt v Holland Abundant Life Fellowship, 462 Mich 591; 614 NW2d 88 (2000); Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000); People v Kazmierczak, 461 Mch 411; 605 NW2d 667 (2000); McDougall v Schanz, 461 Mich 15; 597 NW2d 148 (1999); People v Lukity, 460 Mich 484; 596 NW2d 607 (1999); RitchieGamester v Berkley, 461 Mich 73; 597 NW2d 517 (1999). This listing is intended to be representative, not exhaustive.

 See, e.g., Robertson, supra at 758; Pohutski at 694; Nawrocki, at 180; Mudel, supra at 713; Robinson, supra at 464-465; Kazmierczak, supra at 425.

 In most of the cases in footnote 2, the majority overruled precedent because of its disagreement with earlier Courts’ interpretations of statutory or constitutional principles. See, e.g., Cornell, supra; Koontz, supra; Robertson, supra; Pohutski, supra; Glass, supra; Nawrocki, supra; Brown, supra; Mudel, supra; Lukity, supra; Kazmierczak, supra; McDougall, supra. In only two of them does the majority believe that precedent was rendered obsolete by the evolution of the law. Hardiman, supra; Robinson, supra. In others, it does not even acknowledge that precedent is being overturned, although the dissent points it out. Hanson, supra; Ritchie-Gamester, supra.

 Bradley v Saranac Community Schools Bd of Ed, 455 Mich 285; 565 NW2d 650 (1997); People v Bailey, 451 Mich 657; 549 NW2d 325 (1996); W T Andrew Co, Inc v Mid-State Surety Corp, 450 Mich 655; 545 NW2d 351 (1996); Corl v Huron Castings, Inc, 450 Mich 620; 544 NW2d 278 (1996); People v Wood, 450 Mich 399; 538 NW2d 351 (1995); Sokolek v Gen Motors Corp, 450 Mich 133; 538 NW2d 369 (1995); People v Kevorkian, 447 Mich 436; 527 NW2d 714 (1994); Jennings v Southwood, 446 Mich 125; 521 NW2d 230 (1994); People v VanderVliet, 444 Mich 52; 508 NW2d 114 (1993); Auto Club Ins Ass’n v Frederick & Herrud, Inc, 443 Mich 358; 505 NW2d 820 (1993); In re Hatcher, 443 Mich 426; 505 NW2d 834 (1993); People v Fisher, 442 Mich 560; 503 NW2d 50 (1993).

 Sington, Hardiman, supra; Cornell, supra; Koontz, supra; Robertson, supra; Pohutski, supra; Hanson, supra; Brown, supra; Glass, supra; Nawrocki, supra; Mudel, supra; Stitt, supra; Robinson, supra; Kazmierczak, supra; McDougall, supra; Lukity, supra; Ritchie-Gamester, supra; People v Graves, 458 Mich 476; 581 NW2d 229 (1998); McKenzie v Auto Club Ins Ass’n, 458 Mich 214; 580 NW2d 424 (1998); People v Kaufman, 457 Mich 266; 577 NW2d 466 (1998); AFSCME v Highland Park Bd of Ed, 457 Mich 74, 577 NW2d 79 (1998); People v Lemmon, 456 Mich 625; 576 NW2d 129 (1998).

 According to the clerk’s office, the Court disposed of 13,682 cases between 1993 and 1997. Between 1998 and June 30, 2002, it disposed of 11,190 cases.

 The simplicity of this prong as stated in Robinson and applied to legislative interpretation gives rise to a large part of the differences between the majority and myself. It appears that the majority believes itself gifted with prodigious and unprecedented insight into the mind of the Legislature. The recent sharp increase in reversals of precedent is alarming because it suggests that this majority believes that only it, not present dissenters nor many past majorities of this Court, can discern the true intent of the Legislature.
It is not, as the majority alleges here, a matter of my not understanding “who governs in a republic.” Nor is it a matter of defending “past judges’ errors” or feeling less obligation than they to “adhere to the direction of the people’s representatives .. . .” Ante at 169-170. Rather, it is a matter of exercising judicial restraint and of avoiding concluding too easily that other experienced justices wrongly interpreted legislation. It is a matter of not falling prey to a zealot’s conviction that what has been done in the past by others has been simply wrong.
Stare decisis is not an argument intended to resuscitate the dead hand of the judiciary. Adherence to it contributes to, not detracts from, the integrity of our constitutional system. As Justice Marshall once pointed out:
That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact. [Vasques v Hillery, 474 US 254, 265-266; 106 S Ct 617; 88 L Ed 2d 598 (1986).]

 For instance, in Lesner v Liquid Disposal, Inc, 466 Mich 95; 643 NW2d 553 (2002), I found, as did the majority, that it was necessary to overrule Weems v Chrysler Coop, 448 Mich 679; 533 NW2d 287 (1995). This is because Weems provided a formula for the calculation of death benefits that was utterly nonsensical when multiple partial dependents were considered.