# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHARITY ALBRIGHT MENDOZA,

      Defendant-Appellant.

UNPUBLISHED
January 19, 2017

No. 328109
Oakland Circuit Court
LC No. 2011-236522-FH

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DEMIAN MENDOZA,

      Defendant-Appellant.

No. 328114
Oakland Circuit Court
LC No. 2011-236519-FH

Before: TALBOT, C.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

      In Docket No. 328109, defendant Charity Albright Mendoza appeals by right her jury convictions of possession of marijuana, MCL 333.7403;[1] and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In Docket No. 328114, defendant

---

[1] Among other offenses, Charity was originally charged with possessing marijuana with intent to distribute, MCL 333.7401. The jury found Charity guilty of the lesser included offense of possession of marijuana. However, Charity's judgment of sentence indicates she was found guilty of the higher offense under MCL 333.7401, and the judgment of sentence also erroneously indicates that she pled or was found guilty in 2012. Given these discrepancies, we remand for the ministerial task of correcting Charity's judgment of sentence to comport with the jury's verdict. See *People v Jamison*, 488 Mich 851; 788 NW2d 6 (2010).

-1-

Demian Mendoza appeals by right his jury convictions of possession of ecstasy, MCL 333.7403; one count of possessing marijuana with the intent to deliver, MCL 333.7401; one count of manufacturing marijuana, MCL 333.7401; and three counts of felony-firearm, MCL 750.227b.[2] For the reasons explained in this opinion, we affirm in both dockets, but we remand only for the ministerial task of correcting Charity's judgment of sentence in docket no. 328109.

## I. FACTS & PROCEDURAL HISTORY

In October 2010, police officers obtained a search warrant and searched a home located at 768 Allen Street in Ferndale, Michigan. Demian was home when police arrived, and Charity arrived later. Demian and Charity are husband and wife. During the search, officers seized various items, including ecstasy pills, marijuana, and several firearms. They also found a marijuana grow operation in the garage and seized 14 marijuana plants. At the time of the search, Demian and Charity were registered patients and primary caregivers under the Michigan Medical Marihuana Act (the MMMA), MCL 333.26421 *et seq*. Demian had three registered patients, including Charity, and Charity had one registered patient.

Following the search, the prosecution charged both Charity and Demian with six separate offenses: one count of possessing ecstasy with the intent to deliver, MCL 333.7401; one count of possessing marijuana with the intent to deliver, MCL 333.7401; one count of manufacturing marijuana, MCL 333.7401; and three counts of felony-firearm—one count for each controlled substance offense, see MCL 750.227b.

In June 2011, Charity and Demian both filed motions challenging the search of the home and the charges against them. In relevant part, they both argued that the trial court should hold an evidentiary hearing to determine whether they were immune from prosecution for the marijuana charges or had a viable defense under the MMMA. The court rejected Charity and Demian's challenges to the search of the home without holding an evidentiary hearing, but agreed that they were entitled to an evidentiary hearing to determine whether they had immunity under § 4 or a defense under § 8 of the MMMA. See MCL 333.26424; MCL 333.26428. However, the MMMA evidentiary hearing did not occur in 2011. Nevertheless, in January 2012, the trial court issued an opinion and order in which it rejected defendants' attempt to assert immunity under § 4 of the MMMA and precluded them from presenting a defense under § 8 of the MMMA. The trial court explained that the undisputed evidence showed that Demian and Charity possessed more marijuana than allowed under the MMMA and, for that reason, they were not entitled to the immunity provided by § 4 or the defense provided under § 8.

Defendants failed to appear for trial in January 2012. They were eventually apprehended in Peru and brought back to Michigan in 2014. In December 2014, citing clarifications to the law that occurred during their absence, defendants both moved for an evidentiary hearing to determine whether they had a viable defense under § 8 of the MMMA. The trial court held an

---

[2] This Court consolidated the appeals by Charity and Demian for the efficient administration of the appellate process. *People v Mendoza*, unpublished order of the Court of Appeals, entered July 8, 2015 (Docket Nos. 328109; 328114).

evidentiary hearing in January 2015. The trial court issued a detailed opinion and order in March of 2015, concluding that defendants did not have a viable § 8 defense. The matter then proceeded to trial, and the jury convicted defendants as described above.

After trial, in December 2015, defendants both moved for an evidentiary hearing and a new trial. Citing our Supreme Court's recent decision in *People v Hartwick*, 498 Mich 192; 870 NW2d 37 (2015), they argued that they were entitled to an evidentiary hearing to determine whether they were immune from prosecution under § 4 of the MMMA. The trial court denied the motions without holding an evidentiary hearing. The trial court concluded that defendants had not established grounds for a new trial or an evidentiary hearing. The court reasoned that, although there had not been a § 4 hearing in 2012, the trial court did hold a hearing on the affirmative defense stated under § 8 in 2015, during which the trial court determined that Charity and Demian possessed more marijuana than permitted under § 4.[3] Accordingly, the trial court denied the motions. Charity and Demian now appeal to this Court.

## II. MOTION TO SUPPRESS THE EVIDENCE

On appeal, Charity and Demian first argue that the trial court erred by denying their motions to suppress the evidence obtained during the search of their home without conducting an evidentiary hearing. In particular, they argue that the trial court erred by failing to conduct a hearing under *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978) to examine the validity of the search warrant. Had the trial court conducted such a hearing, defendants maintain that they could have shown that an anonymous tipster mentioned in the affidavit was not anonymous, that the tipster knew that defendants were registered under the MMMA, and that the affidavit contained false statements with respect to Demian's registered address. Aside from the validity of the search warrant, defendants maintain that, once police officers became aware that Demian and Charity were registered under the MMMA, the search became "unreasonable and impermissible." According to defendants, they were entitled to an evidentiary hearing on the reasonableness of the search and the trial court's denial of their motion to suppress without holding an evidentiary hearing was erroneous. We disagree.

## A. STANDARD OF REVIEW

This Court "reviews de novo a trial court's interpretation of the law or the application of a constitutional standard to uncontested facts." *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006). This Court, however, reviews the trial court's factual findings in ruling on a motion to suppress for clear error. *Id.* Whether to conduct an evidentiary hearing is generally committed to the discretion of the trial court. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008); *Martin*, 271 Mich App at 309. "However, this Court reviews the facts supporting the denial of the evidentiary hearing for clear error and reviews the application of those facts to the law de novo." *Martin*, 271 Mich App at 309.

---

[3] Judge Cheryl Matthews presided over defendants' motions for a new trial and an evidentiary hearing while the earlier proceedings, including the trial, were conducted before Judge Colleen O'Brien.

## B. *FRANKS* HEARING

There is a strong preference for searches conducted under the authority of a search warrant. *Martin*, 271 Mich App at 297. "A search warrant may be issued only on a showing of probable cause that is supported by oath or affirmation." *People v Nunez*, 242 Mich App 610, 612; 619 NW2d 550 (2000). "The magistrate's findings of reasonable or probable cause shall be based on all the facts related within the affidavit made before him or her." *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001), quoting MCL 780.653.

"Probable cause to issue a search warrant exists where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000). Following the enactment of the MMMA, the standard for establishing probable cause has not changed for crimes involving marijuana. See *People v Brown*, 297 Mich App 670, 677; 825 NW2d 91 (2012). That is, marijuana possession and manufacturing remains illegal, and "to establish probable cause, a search-warrant affidavit need *not* provide facts from which a magistrate could conclude that a suspect's marijuana-related activities are specifically not legal under the MMMA." *Id.* at 677 & n 4 (emphasis added). However, "if the police do have clear and uncontroverted evidence that a person is in full compliance with the MMMA, this evidence must be included as part of the affidavit because such a situation would not justify the issuance of a warrant." *Id.* at 677 n 5.

The affidavit supporting a search warrant is presumed valid. *Martin*, 271 Mich App at 311. A defendant is entitled to a hearing to challenge the validity of the affidavit only if he or she "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 311, quoting *Franks*, 438 US at 155-156. This challenge to the affidavit "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*, quoting *Franks*, 438 US at 171. The defendant's "allegations must be accompanied by an offer of proof." *Franks*, 438 US at 171. Finally, when determining whether a *Franks* hearing is required, any invalid portions of the affidavit may be severed, *Ulman*, 244 Mich App at 510; and "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required," *Franks*, 438 US at 171-172. "The rule from *Franks* is also applicable to material omissions from affidavits." *Martin*, 271 Mich App at 311.

In this case, Detective Scott Blanchard submitted an affidavit in support of the request for a warrant to search the residence located at 768 Allen in Ferndale, Michigan. Blanchard averred that he "received an anonymous tip that Demian Mendoza is selling marijuana at 768 Allen, Ferndale." Blanchard further averred that he pulled the trash from in front of the home on two occasions and discovered "residue evidence of Marijuana" in the bags on both occasions and discovered mail with 768 Allen as the receiving address. The suspected marijuana tested positive using a field test for marijuana. Blanchard further stated that he ran "a Clemis check on

-4-

768 Allen"[4] and discovered that Demian had used that address. He similarly checked with the Secretary of State and determined that Demian "has a registered address" of 768 Allen in Ferndale. On the basis of these averments, the magistrate authorized the search of 768 Allen.

In June 2011, Charity and Demian challenged the validity of the search of their home. Charity and Demian identified two statements in the affidavit that were purportedly false: Blanchard's identification of the tip as "anonymous" and his statement that he checked with the Secretary of State and discovered that 768 Allen was registered as Demian's address. Specifically, defendants contended that, contrary to his averment, Blanchard actually knew the identity of the informant. They also asserted that Demian did not change his address with the Secretary of State until after the search, meaning that Blanchard's averment that he verified Demian's address with the Secretary of State must be false.

However, with respect to the tipster's identity, Demian and Charity did not present any evidence tending to show that Blanchard did in fact know the identity of the person who gave the tip. This type of conclusory challenge to the affidavit did not merit a *Franks* hearing. See *Martin*, 271 Mich App at 311. Further, even if Blanchard did know the informant's identity, defendants did not explain how the identity of the informant altered the probable cause determination. Regardless of the veracity of the informer's tip, the trash pull provided direct evidence of illegal activity involving marijuana. See *People v Keller*, 479 Mich 467, 477; 739 NW2d 505 (2007). To the extent defendants suggest that their MMMA registration rendered their conduct legal and that the tipster knew of their MMMA registration, the unsubstantiated assertion that the tipster knew that defendants had registry cards under the MMMA is far from "clear and uncontroverted evidence" that they were in "full compliance" with the MMMA. See *Brown*, 297 Mich App at 677 n 5. In other words, Blanchard did not have to aver that Demian was not in compliance with the MMMA, and the omission of information that the informant knew defendants were registered under the MMMA does not undermine the magistrate's probable cause determination. *Id.* at 677-678. Absent an offer of proof tending to show that Blanchard had clear and uncontroverted evidence that defendants were in full compliance with the MMMA, defendants have not shown a material omission in the affidavit and they have not established the need for a *Franks* hearing on this basis. See *Ulman*, 244 Mich App at 510.

Regarding's Demian's address, even assuming that Blanchard falsely stated that he verified Demian's address with the Secretary of State, defendants failed to establish that this false statement altered the probable cause determination. In the affidavit, Blanchard also averred that he "ran a Clemis check" and found that Demian had used 768 Allen as his address on numerous occasions. Defendants did not contest the veracity of that averment. Hence, even if the averment about the Secretary of State were false, that statement was unnecessary to the probable cause determination. See *Franks*, 438 US at 171-172.

Overall, because Charity and Demian failed to make the substantial preliminary showing that Blanchard made a false statement or a material omission that was necessary to the

---

[4] CLEMIS apparently stands for Oakland County's "Court & Law Enforcement Management Information System."

magistrate's probable cause determination, the trial court did not abuse its discretion when it declined to hold an evidentiary hearing under *Franks*. See *Martin*, 271 Mich App at 309, 311. Considering Blanchard's affidavit, there was a substantial basis for the magistrate's conclusion that there was a fair probability that unlawfully possessed marijuana or evidence of unlawful marijuana distribution would be found at the home. *Id.* at 297. Thus, the search warrant was properly issued, and defendants were not entitled to suppression of the evidence based on the contents of the supporting affidavit.

## C. EVIDENTIARY HEARING

Aside from their challenges to the affidavit which they contend merited a *Franks* hearing, defendants also argue that the evidence obtained in the search should have been suppressed because there ceased to be probable cause to search the home once Demian presented the officers with registry cards under the MMMA. At that point, defendants contend that the officers could not search unless they had probable cause to believe that Demian was not complying with the MMMA. On appeal, relying on our Supreme Court's decision in *People v Talley*, 410 Mich 378; 301 NW2d 809 (1981), overruled in part by *People v Kaufman*, 457 Mich 266; 577 NW2d 466 (1998), defendants maintain that the trial court erred by denying their motions to suppress the evidence without first conducting an evidentiary hearing pertaining to this issue.

Defendants' reliance on *Talley* is misplaced, and defendants are not entitled to relief merely because the trial court denied their respective motions to suppress the evidence without first holding an evidentiary hearing. Briefly stated, the Court in *Talley* held that, when ruling on a motion to suppress, a trial court "shall not place exclusive reliance on the preliminary examination transcript in the determination of the legality of a contested search or seizure." *Id.* at 390. Instead, to allow for a proper assessment of credibility and conflicting evidence, there should be a de novo evidentiary hearing "to promote a more thorough exposition of the events surrounding a contested search or seizure." *Id.* at 390-392 & n 3. However, *Talley* acknowledged that there may be circumstances in which the facts are undisputed, and the Court did not address the question of whether counsel may stipulate to the court's reliance on a preliminary examination transcript. *Id.* at 392 n 4. Later, the Michigan Supreme Court determined that parties could stipulate to the facts for purposes of a court's determination on a motion to suppress, and the Court overruled *Talley* "insofar as it has been understood to mean that counsel cannot agree to have a motion to suppress decided on the basis of the record of the preliminary examination." *Kaufman*, 457 Mich at 276. Read together, *Talley* and *Kaufman* make plain that an evidentiary hearing is not always necessary for a decision on a motion to suppress. Rather, where the parties agree to the facts, the issue of whether to suppress evidence may be resolved without the need for additional factual development. See MCR 6.110(D)(2).

In this case, defendants requested an evidentiary hearing before trial. Nevertheless, a review of the record makes clear that the essential facts were never in dispute, and in these circumstances defendants are not entitled to relief on appeal. That is, defendants maintain that probable cause for the search ceased when Demian presented police with valid registry cards under the MMMA. Relevant to this issue, at the preliminary examination, Blachard testified that "immediately upon having contact with" police, Demian presented five registry cards, establishing that Demian was a registered patient and a caregiver under the MMMA. Neither defendants nor the prosecutor have challenged Blanchard's description of events, meaning that

no one disputes the factual premise underlying defendants' argument that the search should have stopped once Demian produced valid registry cards.[5]  In other words, while claiming an evidentiary hearing was necessary, defendants "have failed to point to any area in which further elucidation of the facts might advance their position." *People v Futrell*, 125 Mich App 568, 572; 336 NW2d 834 (1983).  In these circumstances, there were simply no factual disputes of the type at issue in *Talley*; rather, there were only questions of law to be resolved by the trial court.  Cf. *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).  On this record, the trial court's failure to hold an evidentiary hearing does not entitle defendants to relief on appeal.

Substantively, there is also no merit to defendants' assertion that Demian's presentation of registry cards under the MMMA precluded the police from searching the home, and the trial court did not err by denying defendants' motions to suppress.  The officers searched the home at issue under the authority of a search warrant.  As we have discussed, there was probable cause for the issuance of the warrant.  See MCL 780.653.  Once the search warrant was issued, the permissible scope of the search was determined by reference to the search warrant.  *People v Cortez*, 451 Mich 888; 547 NW2d 312 (1996).  Defendants offer no indication that the police exceeded the scope of the warrant or otherwise conducted the search in an unreasonable manner.

In particular, contrary to defendants' arguments, the possession of registry cards did not preclude the search of the house incident to a warrant.  Since the passage of the MMMA, our Supreme Court has explained that the MMMA does not legalize the possession, manufacture, or distribution of marijuana; rather, it provides certain protections for a limited class of individuals involved in the medical use of marijuana, provided that the use of marijuana is carried out in accordance with the MMMA.  *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012).  A party seeking to assert the protections of § 4 of the MMMA must show (1) possession of a valid registry identification card; (2) possession of no more than the amount of marijuana permitted under the MMMA; (3) storage of any marijuana plants in keeping with the requirements of the MMMA; and (4) medical use of marijuana.  *Hartwick*, 498 Mich at 217, 221.  These requirements are not all satisfied merely because someone possesses a registry card.  *Id.* at 233-234.  "A registry identification card simply qualifies a patient for the medical use of marijuana. It does not guarantee that an individual will always possess only the amount of marijuana allowed under the MMMA."  *Id.*  Stated differently, "possession of a valid registry identification card, alone, does not establish any presumption for the purpose of § 4."  *Id.* at 202 n 9.

It follows that simply presenting a registry card to police does obviate the probable cause set forth in a valid search warrant.  Instead, as noted, there is a lack probable cause only where police "have clear and uncontroverted evidence that a person is in full compliance with the

---

[5] Indeed, at the hearing on defendants' motion to suppress, Demian's counsel expressly relied on the preliminary hearing transcript and indicated that the facts were clear, stating:  "And it's clear that the officers were met at the door and informed immediately that they were dealing with medical marijuana care givers and patients, and proof was supplied to them. . . . And in fact, from the preliminary exam transcript, the officer testified it was seconds within [sic] he was there that he was informed and given proof of medical marijuana patients/care giver."

MMMA." *Brown*, 297 Mich App at 677 n 5. As discussed, there is no such clear and uncontroverted evidence in this case. In sum, because Demian's presentation of registry cards did not invalidate the legally obtained search warrant, the trial court did not err by denying defendants' motion to suppress the evidence found during the search.

### III. HEARING UNDER § 4 OF THE MMMA

Charity and Demian next argue that, under the decision in *Hartwick*, which was decided after the trial in this case, the trial court erred when it refused to hold an evidentiary hearing to determine whether they were entitled to the immunity provided under § 4 of the MMMA.

"Section 4 provides a broad grant of immunity from criminal prosecution and civil penalties to registered qualifying patients and connected primary caregivers." *Hartwick*, 498 Mich at 215. A defendant seeking to assert immunity under § 4 bears the burden of proving entitlement to immunity by a preponderance of the evidence. *Id.* at 217. In particular, to establish entitlement to immunity, the defendant must show that, at the time of the charged offense, the defendant:

(1) was issued and possessed a valid registry identification card,

(2) complied with the requisite volume limitations of § 4(a) and § 4(b),

(3) stored any marijuana plants in an enclosed, locked facility, and

(4) was engaged in the medical use of marijuana. [*Hartwick*, 498 Mich at 217-218.]

"The second element—the volume limitations of § 4(a) and § 4(b)—requires that the qualifying patient or primary caregiver be in possession of no more than a specified amount of usable marijuana and a specified number of marijuana plants." *Id.* at 218. The allowable amount depends on whether the individual is a qualified patient and/or a primary caregiver. *Id.* at 218-219.

When a primary caregiver is connected with one or more qualifying patients, the amount of usable marijuana and the number of plants is calculated in the aggregate—2.5 ounces of usable marijuana and 12 marijuana plants for each qualifying patient, including the caregiver if he or she is also a registered qualifying patient acting as his or her own caregiver. When a qualifying patient cultivates his or her own marijuana for medical use and is not connected with a caregiver, the patient is limited to 2.5 ounces of usable marijuana and 12 marijuana plants. A qualifying patient or primary caregiver in possession of more marijuana than allowed under § 4(a) and § 4(b) at the time of the charged offense cannot satisfy the second element of immunity. [*Id.*]

"Once a claim of immunity is made, the trial court must conduct an evidentiary hearing to factually determine whether, for each claim of immunity, the defendant has proved each element required for immunity." *Id.* at 217. "[E]ntitlement to § 4 immunity is a question of law to be decided by the trial court before trial." *Id.* at 201. "[T]he trial court must resolve factual

disputes relating to § 4 immunity, and such factual findings are reviewed on appeal for clear error." *Id.* In comparison, "the trial court's legal determinations under the MMMA are reviewed de novo on appeal." *Id.*

In this case, it is undisputed that Demian is a qualifying patient and a registered caregiver to three patients. In comparison, Charity is a qualifying patient and a registered caregiver for one patient. It follows that Demian could only assert immunity under § 4 if he showed by a preponderance of the evidence that he possessed not more than 10 ounces of useable marijuana.[6] Similarly, Charity could only assert immunity under § 4 if she showed by a preponderance of the evidence that she possessed not more than 5 ounces of useable marijuana.[7]

Notably, the trial court did not hold a § 4 hearing before trial to determine defendants' entitlement to § 4 immunity. In June 2011, Charity and Demian both moved for a hearing to determine whether they were immune from prosecution of the marijuana offenses under § 4 of the MMMA. The prosecutor agreed that such a hearing should be held and dates were scheduled for a hearing on this issue. However, those dates passed without defendants presenting evidence to the trial court to establish their right to immunity. Consequently, at a hearing in December of 2011, the trial court indicated that defendants had "waived" their rights to such a hearing. Nonetheless, the trial court then ordered the parties to brief the issue of immunity under § 4 of the MMMA. Following this briefing, the trial court issued a written opinion in 2012, stating that defendants could not claim immunity under § 4 because they were permitted to possess "12.5 ounces" of marijuana under § 4, but the evidence showed that they possessed "17.27 ounces" of marijuana. In making this calculation, the trial court included all the marijuana found in the home. Similarly, following an evidentiary hearing in 2015 on defendants' claim to a defense under § 8, the trial court concluded as a factual matter that "[t]he total weight of the harvested marijuana seized at the scene was 488.8 grams or 17.27 ounces or 1.07 lbs."

After the jury found Demian and Charity guilty, our Supreme Court issued its decision in *Hartwick*, holding that whether a defendant is entitled to § 4 immunity is "a question of law to be decided by the trial court before trial" and that the trial court "must resolve factual disputes relating to § 4 immunity." *Hartwick*, 498 Mich at 201. Relying on *Hartwick*, following trial, both Demian and Charity moved for a hearing to determine whether they had immunity under § 4. They both argued that there was evidence that the marijuana seized from the basement was unusable trimmings, such that it should not be included in the total amount that they possessed for purposes of establishing immunity from prosecution.[8]

---

[6] Demian could possess 2.5 ounces on his own behalf, MCL 333.26424(a), and 2.5 ounces for each of his three patients, MCL 333.26424(b)(1). See *Hartwick*, 498 Mich at 219 n 54.

[7] Charity could possess 2.5 ounces on her own behalf and 2.5 ounces for her patient. See MCL 333.26424(a); MCL 333.26424(b)(1); *Hartwick*, 498 Mich at 219 n 54.

[8] In describing the amount of marijuana an individual may possess, the MMMA provides that "[a]ny incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount." MCL 333.26424(a). Further, the definition of

Contrary to defendants' arguments, the trial court's failure to hold a § 4 hearing does not entitle defendants to relief because the uncontroverted facts establish that defendants were in possession of more marijuana than the limits allowed under the MMMA. In particular, as credited by the trial court, the evidence offered by the senior forensic chemist who weighed the marijuana showed that—excluding packaging—a net amount of 488.8 grams, i.e., 17.27 ounces, of "harvested marijuana" was recovered at the scene. Of this amount, 183.4 grams formed part of the disputed "trimmings" discovered in the basement. In other words, even assuming arguendo that the marijuana found in the basement should not be included in the calculation of marijuana for purposes of § 4 immunity, the evidence shows that police recovered 305.4 grams, i.e., 10.77 ounces, of marijuana at the scene.

Defendants argue that, excluding the basement trimmings, the residual 10.77 ounces is within the limits established by § 4.[9] However, as an initial matter, this argument ignores the trial court's factual determination that "the harvested marijuana seized at the scene was 488.8 grams or 17.27 ounces." Plainly, given this factual finding, the trial court did not err by determining that defendants were in possession of more marijuana than allowed by the MMMA and thus not entitled to the immunity provided by § 4. See MCL 333.26424(a); MCL 333.26424 (b)(1); *Hartwick*, 498 Mich at 219.

Moreover, even excluding the basement marijuana for the sake of argument,[10] defendants' joint possession of 10.77 ounces of marijuana violated the MMMA. Defendants' argument to the contrary is premised on the mistaken assertion that the amounts possessed by Demian and Charity may be considered in communally. That is, defendants contend that Charity may possess a total of 5 ounces and Demian may possess a total of 10 ounces, such that

---

"marijuana" does not include "the mature stalks of the plant." MCL 333.26423(2)(h); MCL 333.7106(4). At trial, the prosecutor's expert identified the basement marijuana as "shake" containing leaves and small buds that, while lower quality and less expensive, was nonetheless marijuana and indeed usable marijuana. However, on cross-examination, the expert admitted that the bags contained some unspecified amount of "stems" and a discarded twist-tie. In comparison, at trial, Demian testified that bags found in the basement consisted of trimmings from the marijuana plants that he considered to be "trash." Charity offered similar testimony at the § 8 hearing, asserting that these trimmings had been swept off the floor and the bags contained "branches, dust, debris, things that were swept up after."

[9] At trial, defense counsel maintained that, excluding the marijuana in the basement, "10.77 ounces is really the amount that we're talking about." This was consistent with the weights provided at trial. Yet, inexplicably, on appeal, defendants assert that, subtracting the basement trimmings, the amount in question is 276.84 grams, i.e., 9.77 ounces. Defendants do not explain the basis for this figure.

[10] We note that, although Judge O'Brien impliedly decided the issue by concluding that the amount of "harvested marijuana" was 488.8 grams, Judge O'Brien did not expressly rule on the issue of whether any or all of the trimmings in the basement should be excluded from the calculation of the marijuana possessed by defendants for purposes of defendants' entitlement to § 4 immunity.

collectively they may possess a total of 15 ounces. That assumption, however, does not comport with the MMMA.

As our Supreme Court has explained, the MMMA does not contemplate collective marijuana operations. See *People v Bylsma*, 493 Mich 17, 27, 34; 825 NW2d 543 (2012). Rather, § 4 plainly limits the amount of marijuana that a qualifying patient or registered primary caregiver may possess. *Id.* at 29, 35. And, the limits applicable to immunity are stated in terms of individuals, not groups. See MCL 333.26424(a) (stating that the qualifying patient may not possess more than 2.5 ounces); MCL 333.26424(b)(1) (stating that the primary caregiver may not possess more than 2.5 ounces of marijuana for each qualifying patient). Under the MMMA, each patient or caregiver must show that he or she did not possess marijuana in excess of his or her individual limit, as provided under § 4—that is, the limits provided under § 4 cannot be considered on a communal basis. See *Bylsma*, 493 Mich at 34-35.

It follows that, in this case, Demian could possess not more than 10 ounces of marijuana and Charity could possess not more than 5 ounces of marijuana. Yet, as we have discussed, even excluding the basement trimmings, police recovered 10.77 ounces of marijuana in defendants' possession, which is more than either defendant could lawfully possess under the MMMA. Although defendants disputed whether the marijuana seized from the basement should be counted against their totals, they never disputed the accuracy of the weights attributed to the marijuana seized from the other areas. They also did not dispute that the marijuana collected from those other areas was within their joint dominion and control for purposes of determining compliance with the applicable limits. See *Bylsma*, 493 Mich at 30-32 (holding that the traditional definition of possession applies to the marijuana possessed for purposes of the MMMA); *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended 441 Mich 1201 (stating that possession can be actual or constructive and may be joint with more than one person). Indeed, neither defendant claimed possession of any specific quantity of marijuana. On these uncontested facts, Demian and Charity each possessed 10.77 ounces of marijuana, which was more than either defendant could lawfully possess under the MMMA. See MCL 333.26424(a); MCL 333.26424(b)(1); *Hartwick*, 498 Mich at 219.

Given that the undisputed facts establish that defendants were not within the limits applicable under the MMMA, they were not entitled to the immunity provided under § 4, and they are not entitled to relief based on the trial court's failure to conduct a § 4 hearing. Although our Supreme Court remanded the two cases under consideration in *Hartwick* for evidentiary hearings, it did so because there were factual questions that had to be resolved before the trial court could determine whether the defendants were entitled to immunity under § 4. *Hartwick*, 498 Mich at 239, 243. In contrast, in this case, there are no material factual disputes and, in these circumstances, the trial court's failure to hold a § 4 hearing does not entitle defendants to appellate relief. Cf. *People v Bylsma*, __ Mich App __, __ ; __ NW2d __ (2016) (Docket No. 317904); slip op at 15 n 16 (concluding trial court's failure to hold a hearing did not entitle the defendant to appellate relief where "undisputed facts" showed that the defendant was not entitled to a § 8 defense).

IV. DIRECTED VERDICT

-11-

Finally, Charity argues that the trial court erred when it denied her motion for a directed verdict on her felony-firearm charges. Specifically, she argues that the prosecution failed to present any evidence that she was ever present at 768 Allen before the day of the search. For that reason, she maintains, there was no evidence that she carried or possessed a firearm during the commission of a felony.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for a directed verdict. *Martin*, 271 Mich App at 319. We consider the "evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution" to "determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003).

## B. ANALYSIS

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011).

> One must carry or possess the firearm when committing or attempting to commit a felony. Possession of a firearm can be actual or constructive, joint or exclusive. "[A] person has constructive possession if there is proximity to the article together with indicia of control. Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact. [*Id.* at 83 (citations omitted).]

Turning to the present facts, Charity was not entitled to a directed verdict on her felony-firearm charges because, viewing the evidence presented by the prosecutor at the time of Charity's motion, a rational trier of fact could have found that the essential elements of the crimes were proved beyond a reasonable doubt. *Riley (After Remand)*, 468 Mich at 139-140. That is, contrary to Charity's arguments, although she was not at home when the police arrived, there was sufficient evidence evincing Charity's control and dominion over the drugs and weapons found in the house as well as evidence of manufacturing marijuana and her intent to distribute marijuana. The testimony and evidence established that significant amounts of marijuana were found on each level of the home and that a gun was in close proximity to the marijuana found upstairs and to the marijuana found on the main level. In addition, marijuana paraphernalia—including materials that could be used for packaging—were found throughout the house and a sophisticated marijuana grow operation was found in the garage. The officers also found in the living room a case for a CD boxset, which contained a substantial amount of ecstasy pills and jeweler's bags that could be used to package the ecstasy for sale.

In terms of Charity's connection to the various items, in the bedroom, police also found personal items for a man and a woman. Notably, in the dresser, there was a belt buckle bearing the name "Charity," and there was three grams of marijuana on the dresser. Officers also found

vacuum seal bags, a 500 gram scale weight used to calibrate a digital scale, and earrings on the dresser. The officers opened a safe on the same level, and it contained five sizeable bags of marijuana, more than $7,000 in cash, and the birth certificates and passports for both Demian and Charity. On the main level, officers found mail that was addressed to Charity at defendants' old address, and a .45 caliber Glock registered to Charity was found in a closet on the ground-floor. Blanchard further testified that Charity arrived at the home after he and the other officers had begun their search of the home.

A reasonable jury examining the evidence that there was clothing and other items for a woman in the upstairs bedroom could infer that a woman resided at the home and used the upstairs bedroom; and, given the buckle with the name "Charity" as well as Charity's personal papers and other items in the home, the jury could reasonably conclude that woman was Charity. All of this evidence permitted an inference that Charity resided in the home with her husband. Cf. *People v Hardiman*, 466 Mich 417, 422-424; 646 NW2d 158 (2002). This inference was further bolstered by the testimony that Charity arrived at the home during the search. *Id.* at 422. Recognizing that possession may be joint, given the pervasiveness of the items throughout the home and the proximity of the drugs and guns, a rational trier of fact could also reasonably conclude that Charity had possession of the drugs and weapons found in the home, and that she possessed the weapons at the same time she possessed the drugs. See *id.*; *Wolfe*, 440 Mich at 519-520; *People v Burgenmeyer*, 461 Mich 431, 439-440; 606 NW2d 645 (2000). Further, the amount of marijuana, the evidence that the marijuana had been processed, and the packaging materials found throughout the house, including the bags found in close proximity to the ecstasy, permitted an inference that Charity possessed the marijuana and ecstasy with the intent to distribute it. See *Wolfe*, 440 Mich at 524. Finally, the marijuana plants and the bags of "shake" found in the basement permitted an inference that the marijuana from the grow operation had been processed in the home; and, given evidence of Charity's possession of these items, this evidence permitted an inference that Charity either directly participated in the manufacture of the marijuana or aided and abetted Demian while possessing one of the firearms found in the house. See generally *Hardiman*, 466 Mich 428 (explaining that evidence may give rise to multiple inferences and that an inference may give rise to another inference).

Overall, there was sufficient evidence to establish Charity's identity as a person who had constructive possession of the guns, ecstasy, and marijuana found in the home and that she committed the underlying felonies while possessing the firearms. Consequently, the trial court did not err when it submitted the charges to the jury.

Affirmed in both dockets, but remanded for the ministerial correction of Charity's judgment of sentence in docket no. 328109. We do not retain jurisdiction.


/s/ Michael J. Talbot
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra

-13-