*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 2, 2021

Plaintiff-Appellant,

v

No. 348155
Wayne Circuit Court
LC No. 18-008966-01-FH

TREMELL C. MATHEWS,

Defendant-Appellee.

Before: TUKEL, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion to suppress evidence and dismissing the charges of possession of a controlled substance less than 25 grams, MCL 333.7403(2)(a)(v), and possession of marihuana, MCL 333.7403(2)(d). We affirm.

FACTS

On September 20, 2108, Detroit Police Officer Michael Bailey was driving a patrol car, with Officers Yossif Mana and Antoine Hill as passengers, when he saw defendant run a red light in the city of Detroit. Officer Bailey initiated a traffic stop and, upon speaking to defendant, was told that defendant did not have a driver's license and that he did not have insurance for the vehicle he was driving. Officer Bailey had defendant step out of the vehicle and patted him down. He searched defendant a second time, finding several lottery tickets in defendant's pants pocket. Officer Bailey returned the tickets to defendant's pocket and then instructed defendant to stand in front of the patrol car's dashboard camera (dashcam). Defendant, who was not handcuffed or physically restrained in any way, complied, and Officer Hill stood near defendant at the patrol car. Officer Bailey then proceeded to search defendant's vehicle.

During his search, Officer Bailey found four folded lottery tickets that contained suspected heroin under the vehicle's headliner where it met the windshield. Officer Bailey then instructed Officer Mana to search defendant again. During his search of defendant, Officer Mana found a bag of marijuana and a bag of heroin in defendant's pockets. Officer Mana then handcuffed

defendant and informed him that he was under arrest. Defendant was charged with possession of the substances found in his pockets.[1]

A preliminary examination was held in this matter, after which defendant was bound over to the circuit court as charged. Thereafter, defendant filed a motion to suppress evidence and for dismissal. Defendant contended that after he exited his vehicle, his person was twice searched by Officer Bailey. Defendant was then directed to stand in front of Officer Bailey's patrol car, which he did. Defendant asserts that he was not told he was under arrest, nor was he placed in restraints to indicate that he was under arrest. Nevertheless, according to defendant, Officer Bailey began to conduct an invalid "inventory search" of his vehicle and allegedly recovered suspected heroin in the headliner of the vehicle. Defendant averred that Officer Mana then searched him a third time and that neither the third search of his person, nor the search of his vehicle was a search incident to arrest. Defendant further asserted that the search of his vehicle was made in violation of departmental procedure requirements to fill out an impound inventory card, was unconstitutional in that it was not a lawful inventory search, and that no probable cause existed to search his vehicle.[2] The trial court granted defendant's motion, finding that the prosecution's failure to provide an automobile inventory card with respect to the vehicle search demonstrated the police officers' failure to comply with their own policy and that further, without evidence of an inventory card, the prosecution could not sustain its case against defendant.

The prosecution now appeals the trial court's order, asserting that the search of defendant's vehicle was a valid inventory search and was conducted in accordance with departmental policy, such that the vehicle search and the third search of defendant's person were not unconstitutional searches. We disagree.

LAW

"We review for clear error a trial court's findings of fact in a suppression hearing, but we review de novo its ultimate decision on a motion to suppress." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014) (quotation marks and citation omitted). We also review de novo "whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Anthony*, 327 Mich App 24, 32; 932 NW2d 202 (2019).

---

[1] An analysis of the substances found in defendant's vehicle was inconclusive as to the presence of narcotics and defendant was thus not charged with possession of the substances found in the vehicle.

[2] The dissent erroneously states, on several occasions, that the sole basis advanced in support of suppression was the failure to produce an impound inventory card. Contrary to the dissent's repeated assertions otherwise, defendant also did not style his argument as seeking redress for discovery abuse.

Both the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution guarantee every person's right to be free from unreasonable searches and seizures. *People v Slaughter*, 489 Mich 302, 310-11; 803 NW2d 171 (2011). To that end, a warrant supported by probable cause is generally required in order to deem a search reasonable. *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993). There are, however, several specifically established exceptions to the warrant requirement. Relevant to the instant matter, these include searches incident to contemporaneous lawful arrests and inventory searches conducted according to established procedure. *Slaughter*, 489 Mich at 311.

The Supreme Court has held that immediately upon arrest, an officer may lawfully search the person of an arrestee and the area within the arrestee's immediate control without first procuring a warrant. *Illinois v Lafayette*, 462 US 640, 644; 103 S Ct 2605; 77 L Ed 2d 65 (1983). Known as a "search incident to arrest," such searches are permissible in order to "protect evidence in the possession of the arrestee and to protect the officer from danger posed by articles in the arrestee's possession." *Id*. at 644-645, quoting *United States v Robinson*, 414 US 218, 235; 94 S Ct 467; 38 L Ed 2d 427 (1973). The "search incident to arrest" exception to the warrant requirement further permits police to search a vehicle incident to an arrest: (1) when the arrestee is unsecured and within reaching distance of the vehicle's compartments, and (2) when police reasonably believe that evidence related to the crime of arrest may be found in the vehicle. *Arizona v Gant*, 556 US 332, 343; 129 S Ct 1710; 173 L Ed 2d 485 (2009). These two narrow circumstances best serve the interest of officer safety, which is the fundamental rationale of the "search incident to arrest" exception to the warrant requirement. *Id*. at 338, 347-348.

Under the inventory search exception, the police may conduct an inventory search of a vehicle, in accordance with its departmental regulations, that is being impounded following the driver's valid arrest. *People v Toohey*, 438 Mich 265, 271–72; 475 NW2d 16 (1991). Such an inventory search "is considered to be an administrative function performed by the police, rather than part of a criminal investigation which the Fourth Amendment was intended to circumscribe." *Id*. "Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Florida v Wells*, 495 US 1, 4; 110 S Ct 1632; 109 L Ed 2d 1 (1990) (citations omitted). But "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id*. Thus, "[t]he lack of an underlying motive or bad faith by the police in conducting an inventory search is an important aspect which courts must consider in determining the validity of such a search." *Toohey*, 438 Mich at 276. "To be constitutional, an inventory search *must* be conducted in accordance with established departmental procedures, which all police officers are required to follow, and *must not* be used as a pretext for criminal investigation." *Id*. at 284 (emphasis in original).

Evaluation of the reasonableness of a search or seizure depends upon the facts and circumstances of each case. *Id*. at 272. "The benchmark for satisfaction of Fourth Amendment rights is reasonableness, and reasonableness requires a fact-specific inquiry that is measured by examining the totality of the circumstances." *People v Corr*, 287 Mich App 499, 507; 788 NW2d 860 (2010), quoting *Hyde*, 285 Mich App at 436.

It is uncontested that the police in this matter searched defendant's person and vehicle without a search warrant. There appears to be no claim of unconstitutionality with respect to

-3-

the initial and secondary search of defendant's person by Officer Bailey. Officer Bailey initiated a traffic stop of defendant's vehicle when he purportedly saw defendant disregarding a red light. Officer Bailey's preliminary examination testimony and his body camera (bodycam) video played at preliminary examination establish that upon questioning, defendant readily admitted that he did not have a driver's license (a misdemeanor under MCL 257.904), that the vehicle was uninsured, and that he had marijuana on him (but had his medical marijuana card in his wallet). At that point, defendant was asked to step out of the vehicle, which he did, and Officer Bailey twice patted defendant down, finding nothing he deemed suspicious on defendant's person. Defendant does not appear to challenge these two searches. The searches that followed, however, present a different story. The issues for our resolution, then, are whether the third warrantless search of defendant's person and the warrantless search of his vehicle fell within an exception to the warrant requirement.

## I.   ARREST

Officer Bailey testified at the preliminary examination that when defendant was unable to produce a driver's license, he ordered defendant from the vehicle and "placed him in custody for operating without a driving license." Officer Bailey testified that defendant was under arrest when he exited the vehicle. Officer Bailey further testified that he thereafter began conducting an inventory search of defendant's vehicle because the vehicle was going to be impounded. Officer Bailey's bodycam footage played at the preliminary examination and Officer Mana's preliminary examination testimony undermine these assertions.

Before delving into that evidence, we note that it is not clear from the record that the entirety of Officer Bailey's bodycam footage from this incident was played for the district court or admitted into the preliminary examination record. At the beginning of the preliminary examination, defense counsel asked to have "the body cams" admitted into the record. The prosecutor stated that it would not have a problem with the admission of bodycam footage where the bodycam footage corresponding to a particular witness was played while that specific witness was testifying. The court stated it would address the issue at a later time, but did not do so. Nevertheless, is clear from the record that portions of Officer Bailey's bodycam footage, portions of Officer Mana's bodycam footage, and portions of the patrol car dashcam footage were played during the preliminary examination while these two officers testified.

Reviewing the portions of Officer Bailey's bodycam footage that were played during the preliminary examination, we find it significant that when asking defendant to exit the vehicle, Officer Bailey clearly told defendant, "shut the car off real quick man; I ain't gonna hold you up too long." Reviewing Officer Mana's played bodycam footage and testimony, we also find it significant that Officer Mana testified that when defendant was standing in front of the patrol car, and while Officer Bailey was searching his vehicle, defendant was *not* under arrest at that point. Officer Mana affirmatively testified that defendant was instead being detained for an investigation and he was placed under arrest only after the third search of person revealed suspected heroin. Officer Mana testified that it was he who placed defendant under arrest at that time, specifically for a violation of controlled substances law.

To determine whether a person is in custody, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a

-4-

formal arrest." *California v Beheler*, 463 US 1121, 1125; 103 S Ct 3517; 77 L Ed 2d 1275 (1983). In *Berkemer v McCarty*, 468 US 420, 441–42; 104 S Ct 3138; 82 L Ed 2d 317 (1984), for example, the Supreme Court rejected an assertion that the defendant was in custody after his vehicle was stopped and he was told to exit the vehicle:

> . . . respondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. Only a short period of time elapsed between the stop and the arrest. At no point during that interval was respondent informed that his detention would not be temporary. Although Trooper Williams apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, Williams never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. Nor do other aspects of the interaction of Williams and respondent support the contention that respondent was exposed to "custodial interrogation" at the scene of the stop. From aught that appears in the stipulation of facts, a single police officer asked respondent a modest number of questions and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest. [footnotes deleted]

And in *Terry v Ohio*, 392 US 1, 26; 88 S Ct 1868; 20 L Ed 2d 889 (1968) the Supreme Court clarified that there is a distinct difference between a brief detention and an arrest:

> An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.

The actions and testimony of the officers support that defendant was initially briefly detained because he allegedly ran a red light and then freely admitted he did not have a valid driver's license, (see *Terry*, 392 US 1), but was not under arrest until Officer Mana told him he was and handcuffed him. Dashcam footage shows that after defendant exited the vehicle, he stood in front of the police car, chatting with the officers. He was not handcuffed and his movement was not restrained. Approximately six minutes after Officer Bailey initiated his search of the vehicle, Officer Mana approached Officer Bailey (who was still searching) and Officer Bailey told Officer Mana that he had found "folds" (folded lottery tickets, which Officer Bailey testified was indicative of heroin packaging) stuffed into the headliner above the passenger compartment. Officer Bailey then directed Officer Mana to search defendant again, because defendant had a pocket full of lottery tickets. After Officer Mana's search of defendant and his finding of suspected heroin in defendant's pocket, Officer Mana handcuffed defendant, then walked back to Officer Bailey and queried, "take him?" to which Officer Bailey replied "sure." It is only at that point,

some fifteen minutes after Officer Bailey's initial conversation with defendant, that Officer Mana advised defendant, "You're being arrested right now for violation of controlled substances."

Before the search of the car, there was no indicia of a formal arrest.[3] On his exit from the vehicle and for some time thereafter, defendant was not handcuffed, was not read his *Miranda*[4] rights, was not told he was under arrest, and was not placed in a patrol car. His freedom of movement was not restricted. Officer Mana unequivocally testified that it was he that placed defendant under arrest and his bodycam video supports his testimony. Only *after* the search of his vehicle revealed suspected controlled substances and a third search of his person arrest revealed the same did Officer Mana handcuff defendant, tell him he was under arrest, and identify a specific reason for defendant's arrest.[5] Indeed, no mention was made of an arrest for driving without a valid driver's license in any of the bodycam footage that was played at the preliminary examination. Thus, defendant was not under arrest until after the search of his vehicle and the third search of his person, when Officer Mana arrested him.

## SEARCH INCIDENT TO ARREST

As previously indicated, the search of a vehicle incident to arrest is permitted only when the arrestee is unsecured and within reaching distance of the vehicle's compartments, and when police reasonably believe that evidence related to the crime of arrest may be found in the vehicle. *Gant*, 556 US at 343. Even if this Court were to conclude that defendant was under arrest immediately upon exiting the vehicle, Officer Bailey's search of defendant's vehicle does not qualify as a search incident to arrest under *Gant*.[6]

It is uncontested (and the bodycam videos establish) that defendant was pulled over and Officer Bailey initiated contact with him at approximately 10:23 p.m. Less than three minutes later, defendant exited the vehicle and stood in front of the police car, facing away from Officer Bailey and accompanied by Officer Hill. At that point, Officer Bailey began searching defendant's vehicle. The vehicle, and none of the compartments or contents therein were anywhere near defendant, let alone within his reach when the search was initiated or conducted. *Gant*, 556 US at 343. Additionally, if, as the prosecution argues, defendant was under arrest for driving without a valid operator's license upon his exit from the vehicle, there would be no evidence "related to the crime of the arrest" to be found in his vehicle. *Gant*, 556 US at 343.

---

[3] The dissent fails to distinguish between a seizure and an arrest, mixing the caselaw and the concepts interchangeably.

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] While Officer Bailey testified that during his initial two searches of defendant he found lottery tickets in his back pocket, he also testified that this finding was not suspicious to the level of probable cause.

[6] Although the prosecution asserts only that the search at issue was a valid inventory search, for purposes of thoroughness, we nevertheless address whether the search of defendant's vehicle could alternatively qualify as a search incident to arrest.

Given the above, Officer Bailey's search of defendant's vehicle does not qualify as a search incident to arrest.[7]

The dissent repeatedly circles back to the third search of defendant's person that revealed drugs to conclude that there were at least factual issues concerning a valid search incident to arrest or valid inventory search of defendant's person. Notably, however, the prosecution did not raise the issue of whether Officer Mana's search of defendant's pockets was independently justifiable as a search incident to defendant's purported arrest for operating without a license. Rather, the prosecution argued that Officer Bailey's discovery of suspected drugs during a lawful inventory search of defendant's vehicle provided probable cause for Officer Mana to then search defendant's pockets.[8]

And, we cannot ignore the sequence of events. Defendant was not placed under arrest when he exited the car and was *never* placed under arrest for driving without a valid license. Officer Mana unequivocally testified that he arrested defendant. And he did so only *after* Officer Bailey conducted a search of defendant's car, found suspected drugs therein, and told Officer Mana to search defendant a third time. The bodycam footage played at the preliminary examination verifies the above. Defendant was not charged with driving without a valid operator's license. Indeed, the only charges brought against defendant were for violation of controlled substances laws based upon the substances found on his person—which is exactly for what Officer Mana testified he arrested defendant.[9]

Thus, while the dissent may find it unclear why the search of the vehicle is material, it is abundantly clear to this Court, as it was the trial court, that where the search of defendant's

---

[7] The dissent cites to *Illinois v Lafayette*, 462 US at 646, for the proposition that "it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." The dissent, however, omits the phrase immediately preceding the quoted language, which states "*At the stationhouse*, it is entirely proper . . ." (emphasis added). *Lafayette* is thus inapplicable to the matter before this Court.

[8] The prosecution clearly and thoroughly stated its arguments as such and is in no need of vigorous advocacy by the dissent of other arguments.

[9] If a search of defendant, conducted because he was being placed under arrest for driving without a valid license (and otherwise constitutionally sound), had revealed drugs on his person, that search of his person would undoubtedly qualify as a search incident to arrest. But that is not what happened. While the dissent makes much about the majority's purported "fact-finding," this is not a case of "he said she said" or one where the facts are largely contested. Indeed, having video recording of the entire incident and the testimony of Officer Bailey provides the lower court and this Court with a very clear understanding of what transpired. Both courts have been presented issues of *legal*, rather than factual significance. Two searches of defendant's person revealed nothing illegal or suspicious, according to Officer Bailey's uncontested testimony. He thereafter proceeded to search defendant's vehicle as, he specifically testified, an inventory search, and then, only *after* Officer Bailey discovered suspected drugs in the headliner of the vehicle and told Officer Mana to search defendant for the third time were drugs found. We cannot look at the third search of defendant's person in a vacuum.

vehicle prompted the search of his person wherein drugs were found, the search of the vehicle is highly material, as is further discussed below.

INVENTORY SEARCH

Police may conduct an inventory search of a vehicle, in accordance with their departmental regulations, that is being impounded following the driver's valid arrest. *Toohey*, 438 Mich at 271–272. While Officer Bailey could have reasonably arrested defendant for driving without a valid license and thus impounded the vehicle, again, there is no indication that he did so. Assuming, without deciding, the vehicle could have been lawfully impounded upon immediate removal of defendant from the car, the validity of the inventory search depends on the whether there were standardized criteria, policies, or routines regulating how inventory searches were to be conducted. *People v Poole*, 199 Mich App 261, 265; 501 NW2d 265 (1993), citing *Wells*, 495 US at 4. Once a warrantless search has been shown, the state bears the burden of showing that the search is within an exception to the rule. *People v Reed*, 393 Mich 342, 362; 224 NW2d 867 (1975).

While police may exercise some discretion in executing an inventory search consistent with departmental policies, that discretion is not unfettered. *Poole*, 199 Mich App at 266 (citation omitted). After all, the foremost goal of requiring policies "is to prevent inventory searches from being used as 'a ruse for general rummaging in order to discover incriminating evidence' and, therefore, the applicable policy 'should be designed to produce an inventory.' " *Id*. at 266, quoting *Wells*, 495 US at 4. "The individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime." *Wells*, 495 US at 4, quoting *Colorado v Bertine*, 479 US 367, 376; 107 S Ct 738; 93 LEd2d 739 (1987).

In *Wells*, our Supreme Court held that because the applicable standardized criteria did not regulate the opening of containers found during inventory searches, the search "was not sufficiently regulated to satisfy the Fourth Amendment" and that incriminating evidence found as a result of the inventory search was properly suppressed. *Id*. at 5. Thus, to pass constitutional muster, an inventory search must be performed pursuant to a standardized policy and that policy must regulate the manner in which inventory searches are conducted.

The Detroit Police Department Manual's "Impounding of Vehicles" states, in its first paragraph, that "[w]henever a vehicle . . . is impounded by a member of the Department for any reason (e.g., evidence, safekeeping, accidents, abandonment, etc.) two (2) original copies of an Impound Vehicle Card (DPD406) shall be completed in dark blue or black ink." The policy further states that "[a]ny member impounding a vehicle shall complete Impounded Vehicle Cards (DPD406) with an itemized list detailing the 'Accessories on Vehicle' section." There is nothing in the policy setting forth parameters as to how in-depth the interior of a vehicle is to be searched, or what and in what manner specific property found inside the vehicle is to be documented. While Officer Bailey testified at the preliminary examination that his department requires an inventory search of impounded vehicles, there was no further testimony as to how an inventory search is to be conducted and in reading the policy itself, there is no clear departmental policy on how such searches should be conducted. As a matter of law, then, the search here suffered from the same constitutional defect as that in *Wells*, *supra.*

Moreover, Officer Bailey admitted at the preliminary examination that the department policy requires that when a car is to be impounded, an inventory search must be conducted and a

card be filled out with respect to the inventory. He testified that his police report did not include an impound inventory card, and he could not recall if he filled out an impound card inventorying items inside the vehicle as required by departmental procedures. As of the date of the hearing on defendant's motion to suppress (three months after the preliminary examination was held), the prosecution was still unsure whether an impound inventory card existed. The trial court did not have the benefit of any impound inventory card when rendering its decision and we do not consider it here because our review is limited to the record established by the trial court, and a party may not expand the record on appeal. "[T]o consider evidence presented on appeal that the parties failed to present to the trial court would be an impermissible expansion of the lower-court record." *People v Morrison*, 328 Mich App 647, 655; 939 NW2d 728 (2019).

While the dissent states otherwise, no videotape establishing that impound tickets were issued was provided to the trial court in any filings. As previously indicated, at the time of the suppression hearing, the prosecution was unsure if impound inventory cards existed. It said so on the record and requested additional time at the suppression hearing to attempt to ascertain their existence. After the trial court granted defendant's motion to suppress, the prosecution filed no motion for reconsideration and submitted no further documentation or requests to the trial court. Instead, defendant's motion was granted on February 8, 2019 and the prosecution proceeded directly to a claim of appeal with this Court on March 22, 2019.

Additionally, while there may have been videotape showing the issuance of an impound ticket, that appears to this Court to be based on the bodycam footage of Officer Hill. Officer Hill did not testify at the preliminary examination, his bodycam footage was not played at the preliminary examination, and the trial court was not provided with this bodycam footage. The prosecution's attachment of Officer Hill's bodycam footage on appeal was an impermissible attempt to expand the record on appeal, as were much of the prosecution's other attachments to its appeal brief.[10] See MCR 7.210(A)(1) ("In an appeal from a lower court, the record consists of the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced."). Thus, to the extent that the dissent relies upon an impound inventory card or Officer Hill's bodycam footage to establish that the search was a valid inventory search or to establish a question of fact on that issue, such reliance constitutes fact-finding by the dissent based on evidence outside of the record.[11]

---

[10] For example, the preliminary examination in this matter was approximately one hour long and only Officers Bailey and Mana testified. The prosecution improperly appended to its appeal brief approximately four hours of video footage, which was captured by the dashboard cam and the bodycams of all three officers involved in the stop.

[11] Were the evidence even to be properly considered, we note that according to Officer Mana's bodycam, defendant was pulled over at 22:23, and Officer Bailey began searching defendant's car within minutes, as defendant stood outside the vehicle and chatted casually with the other officers. According to Officer Hill's bodycam, it was not until 22:48 that Officer Hill obtained an "Impounded Vehicle" form from the police car. At 22:56, Hill got out of the police car, walked over to where Officer Bailey was still searching defendant's vehicle, and asked Officer Bailey, "Any personal property that you know of?" Officer Bailey responded, "not much," and indicated that there were some shoes in the back of the vehicle. Thus, the impound inventory card did not

-9-

At the hearing on defendant's suppression motion, the trial court correctly stated that the burden was on the People to "demonstrate the reasonableness of this warrantless search." The trial court indicated that it had read defendant's motion and the People's response and had also reviewed the preliminary examination. It additionally stated:

> And at this point, what the Supreme Court has said about warrantless searches and vehicles, it can be done after valid impoundment, it can be done if it's if an inventory is done in accordance with standard procedures of the department and where the purpose is to protect the property or the vehicle owner, to protect the police from lawsuits . . .

Defense counsel argued to the court that the impound inventory card was

> very, very pertinent to this matter, your Honor, because it demonstrates whether or not this clearly was an inventory search with regard to impound, as the standardized policies and procedures of the Detroit Police Department articulate inventory. Without the paperwork, the search is not a valid inventory search.

The failure to even affirmatively assert before the trial court, let alone provide evidence to the trial court, that an impound inventory card was filled out evidenced to the trial court that this was not a valid inventory search. This is necessarily so, as a failure to fill out the card meant that the officers had not been searching in accordance with their written policy.

That is, however, only one piece of the question concerning the constitutionality of an inventory search. Courts "assess the constitutionality of police conduct by whether they acted in accordance with standardized departmental procedures when conducting an inventory search, *in the absence of a claim that the police were attempting to conduct further criminal investigation disguised as an inventory search.*" *Toohey*, 438 Mich at 279 (emphasis added). Part and parcel of a determination concerning the constitutionality of an inventory search, then, is a consideration of a claim that the search was a disguise for further investigation, if one is made. Defendant made such a claim and the trial court could properly consider that claim when making its constitutionality determination.

The prosecution here not only failed to establish that the search of defendant's vehicle was conducted in conformance with departmental procedures, it failed to establish that the search was not used as a pretext for unfounded investigation, as was its burden. See *People v Mayes*, 202 Mich App 181, 184; 508 NW2d 161 (1993). An inventory search may be conducted on a vehicle that is being impounded *following* the driver's valid arrest. *Toohey*, 438 Mich at 271–272. At the preliminary examination, the testimony of Officers Bailey and Mana verify that Officer Bailey *immediately* began searching defendant's vehicle after defendant went to stand by the patrol car. Officer Mana's bodycam video also establishes that he advised defendant of his arrest for possession of controlled substances long after Officer Bailey initiated his search of the vehicle.

More importantly, Officer Bailey performed a search of defendant's vehicle that went well beyond the purpose of an inventory search. He felt along the headliner of the vehicle (within the

---

even make an appearance until more than 20 minutes after Officer Bailey had begun his extensive search of defendant's vehicle and it was not even Officer Bailey who filled it out.

first three minutes of searching), which he advised Officer Mana was a good hiding place because it was "not tore down at all. It's tight up there." Officer Bailey's bodycam also shows him removing part of the dashboard while conducting his purported "inventory" search.

In *People v Sinistaj*, 184 Mich App 191, 199; 457 NW2d 36 (1990), this Court held that the search of a vehicle was not a valid inventory search, in part "because the officers failed to follow established departmental procedures for an inventory search, and because their removal of the panel from inside the trunk went far beyond the scope of those procedures." Thus, where a search is so clearly unrelated to the purposes of an inventory search to protect defendant's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger (*Wells*, 495 US at 4), it is unconstitutional. This principal is reinforced in *Sibron v New York*, 392 US 40, 65–66; 88 S Ct 1889; 20 L Ed 2d 917 (1968):

> Even assuming arguende that there were adequate grounds to search Sibron for weapons, the nature and scope of the search conducted by Patrolman Martin were so clearly unrelated to that justification as to render the heroin inadmissible. The search for weapons approved in Terry consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in Terry place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics, and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents.

Though not binding upon this Court, we also find rulings made by other courts on this issue persuasive. In *State v Jewell*, 338 So 2d 633 (La, 1976), for example, police found the defendant asleep in driver's seat of vehicle which was illegally parked on a highway at night with its motor running and lights out. *Id*. at 635. The defendant was then removed from the vehicle and arrested. *Id*. One police officer immediately searched the defendant's vehicle and found illegal drugs in small aspirin bottle in an open ashtray. *Id*. at 639. The court found that the facts surrounding the search, specifically where standard inventory forms were not completed at time of the search of the vehicle, and the search was made for obtaining incriminating evidence and not for safekeeping of valuables in vehicle, the warrantless search of the vehicle was not justified as an inventory search. *Id*. at 638-640.

In *United States v Taylor*, 636 F3d 461, 463 (CA 8, 2011), a defendant was stopped for a traffic violation and was arrested. A search of his vehicle ensued. The police towing policy required officers to complete a report, which included a detailed inventory of the vehicle's contents, when a vehicle is towed. *Id*. at 463. The court found the police did not comply with their written standardized procedures. *Id*. at 465. The court also noted that "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search" but that " 'something else' must be present to suggest that

the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle." *Id*. at 465.[12]

The "something else" in this matter was the scope and meticulousness of Officer Bailey's search of defendant's vehicle. Officer Bailey's search went far beyond identifying and documenting any items in defendant's car in order to protect his property, insure against claims of lost or stolen property, or to protect the police from danger. The search was not prompted by a plain view of any valuables in the car and did not serve a caretaking function. Rather, it is readily apparent that the search of the vehicle was conducted for the express purpose of investigating potential evidence of any other crime, i.e., it was used as pretext for an investigative search and was thus unconstitutional.

The constitutionality of the inventory search is critical to determining whether the final search of defendant's person was proper. This is necessarily so, as inventory searches are exempt from the warrant requirement precisely because they are "described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v Dombrowski*, 413 US 433, 441; 93 S Ct 2523; 37 L Ed 2d 706 (1973).

The search of defendant's vehicle here was the only thing that supplied the police with probable cause to arrest defendant and search him a final time for contraband. The trial court ultimately held:

> Well the Court at this time is going to grant the defense motion to suppress the evidence. The Court believes that the lack or failure of the People to produce the inventory cards speaks to the department's noncompliance with their own inventory policy, which was attached to the defense motion as Exhibit B.
> The Court does find at this point that without the—the evidence that the people cannot sustain their case and the Court is going to dismiss the case. Without prejudice.

The trial court thereafter entered an order dismissing the case without prejudice.[13]

---

[12] See also, *United States v Lugo*, 978 F2d 631, 636 (CA 10, 1992) ("The issue, however, is whether or not Sabourin's actions in bending over the corner of the vent in the door panel and looking inside, then reaching inside the cavity between the door panel and door to retrieve a paper sack, can fairly be described as a community caretaking function within the meaning of *Cady* [*v Dombrowski*, 413 US 433, 441; 93 S Ct 2523; 37 L Ed 2d 706 (1973)]. We think not. … Thus, we hold that the search into the interior of the door panel was not constitutionally justifiable as a community caretaking function.") and *United States v Best*, 135 F3d 1223, 1225 (CA 8, 1998) ("Trooper Byrd's use of a flashlight to look inside the window and his opening Best's door panel did not serve the purpose of 'protecting the car and its contents.'").

[13] The ruling was not, as the dissent asserts, a dismissal based upon a discovery violation. Defendant requested that the case be dismissed due to a lack of evidence, and the trial court explicitly found that the prosecution did not meet its burden of establishing that the inventory search was conducted in compliance with its departmental policy. The trial court thus found that

In the context of the trial court's ruling (and the only logical conclusion that can be drawn therefrom its decision, given defense counsel's arguments immediately preceding the ruling and the court's statements during the hearing) is that the purported inventory search was actually a pretext for an evidence-gathering expedition. As the dissent points out, defendant was charged with violation of controlled substances laws for items found on his person. He was not charged with any crime related to driving, nor was he charged with any crime concerning anything found in his vehicle. The trial court found that the purported inventory search was invalid because there was no evidence that it had been conducted in compliance with departmental policy. It then concluded that without "the evidence" the people could not sustain their case. The *only* evidence for which defendant was charged was the drugs found on his person. Thus, it was that evidence that must, according to the trial court, be suppressed. Had the trial court determined that the search of defendant's person that revealed the drugs was a separate and valid search, it would not have dismissed the charges.

## SUPPRESSION OF EVIDENCE

Evidence obtained in violation of the rights afforded under the Fourth Amendment and article 1, § 11 is inadmissible as substantive evidence in criminal proceedings. *Toohey*, 438 Mich at 272. The exclusionary rule prohibiting the admission of evidence procured in violation of a person's constitutional rights extends to materials and testimony that are "the products or indirect results of an illegal search" under the "fruit of the poisonous tree" doctrine. *People v Mahdi*, 317 Mich App 446, 470–471; 894 NW2d 732 (2016). As stated by the Supreme Court, the apt question in reviewing evidence that would not have come to light but for illegal police actions is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v United States*, 371 US 471, 487–488; 83 S Ct 407; 9 L Ed 2d 441 (1963) (citation omitted).

"[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *People v Frazier*, 478 Mich 231, 247 n 17; 733 NW2d 713 (2007), *quoting Segura v United States*, 468 US 796, 804; 104 S Ct 3380; 82 LEd2d 599 (1984) (internal citations omitted). Exclusion of such evidence is warranted when the evidence would not have come to light but for the illegal actions of the police. *People v Maggit*, 319 Mich App 675, 693; 903 NW2d 868 (2017).

The substances discovered in defendant's vehicle (which prompted the final search of defendant) would not have come to light but for the police action of engaging in an

---

the inventory search did not pass constitutional muster. In addition, the dismissal was without prejudice. If, as the prosecution now argues (and the dissent appears to agree), that the dismissal was based solely on the failure to produce the inventory cards during discovery, it could have moved for reconsideration or to reinstate the case based upon it locating and belatedly producing the inventory cards. It did not. Instead, it sought appeal to this Court and, in doing so, also attempted expand the record by providing documentary evidence that was not provided to the trial court.

-13-

unconstitutional purported inventory search of his vehicle.  Thus, evidence of the substances found in defendant's vehicle would not have been admissible as evidence against defendant. The same holds true for the substances found on defendant's person.

After Officer Bailey found suspected narcotics during his illegal search of defendant's vehicle, defendant was searched for a third time.  That third search revealed suspected marihuana and controlled substances.  Defendant had twice been already searched without any illegal substances having been found, and he was not subject to the third search until the suspected controlled substances were illegally obtained from his vehicle.  It was at that point that Officer Bailey directed Officer Mana to search defendant again "good."  The third search and finding of illegal substances on defendant's person came about by an exploitation of the illegal vehicle search and the process through which the substances were obtained from his person was not sufficiently distinguishable from the illegal vehicle search to be purged of the primary taint.  *Wong Sun*, 371 US at 487–488.  The trial court thus properly granted defendant's motion to suppress the evidence and dismissed the charges against him.

## THE DISSENT

The dissent asserts that this Court engaged in fact-finding to reach its conclusions and emphasizes that there was no evidentiary hearing conducted on this issue.  However, the dissent disregards the actual evidence provided to the trial court, and ignores that the trial court did not deny the prosecution an opportunity to have an evidentiary hearing.  Neither defendant nor the prosecution requested one.   And, significantly, the prosecution attached no evidence to its response to defendant's motion or at the hearing on defendant's motion to suppress that would allow the trial court to find that the search of defendant's vehicle was conducted in conformance with departmental policies.  In response to defendant's motion, the prosecution set forth law applicable to inventory searches and stated that it was not clear if an inventory card was filled out.  The prosecution stated that while the proper remedy would be to have a hearing to discover if there was one, "[n]onetheless, that alone does not give rise to the suppression of the evidence in this case."  The prosecution argued that the search at issue was "not unreasonable based on the circumstances that have been placed into record during the Preliminary Examination" and premised its response to defendant's motion exclusively on the preliminary examination testimony and evidence.  Parties in a criminal action are permitted to rely on preliminary examination testimony in a post-examination motion[14] to exclude evidence and it is not improper for a trial court to decide a motion to suppress based upon the record of the preliminary examination in that case.  See *People v Kaufman*, 457 Mich 266, 275; 577 NW2d 466 (1998).

Moreover, the rule cited by the dissent for the proposition that the trial court was required to afford the prosecution an opportunity for an evidentiary hearing, MCR 6.110(D)(2), is inapplicable.  That rule provides:

> (2) If, during the preliminary examination, the court determines that evidence being offered is excludable, it must, on motion or objection, exclude the evidence.  If, however, there has been a preliminary showing that the evidence

---

[14] There need not be a written or verbal stipulation to the use of a preliminary examination as the basis for a trial court's ruling on a suppression motion; the fact that the parties base their arguments on the preliminary examination testimony and evidence and do not dispute essential facts is sufficient.  See *People v Kaufman*, 457 Mich 266; 577 NW2d 466 (1998).

is admissible, the court need not hold a separate evidentiary hearing on the question of whether the evidence should be excluded. The decision to admit or exclude evidence, with or without an evidentiary hearing, does not preclude a party from moving for and obtaining a determination of the question in the trial court on the basis of
(a) a prior evidentiary hearing, or
(b) a prior evidentiary hearing supplemented with a hearing before the trial court, or
(c) if there was no prior evidentiary hearing, a new evidentiary hearing.

This rule clearly anticipates situations where a "court" conducting a preliminary examination makes a decision regarding the admissibility of evidence and a party later moves in the "trial court" for a determination on the admissibility of that evidence. Applying the plain and unambiguous language of MCR 6.110(D), *People v Strong*, 213 Mich App 107, 111; 539 NW2d 736 (1995), that rule merely provides that if a court made an evidentiary ruling on a piece of evidence (with or without an evidentiary hearing) during the preliminary examination, the defendant is not precluded from moving for an evidentiary hearing in regard to the admission of that same piece of evidence in the trial court or at trial. Additionally, in *People v Olney*, _Mich App_; _NW2d_ (2020), this Court further clarified that the preliminary examination itself can be considered an evidentiary hearing:

> We do not read [MCR 6.110(D)] as concluding that preliminary examinations are wholly distinct from evidentiary hearings. Rather, the court rule addresses the necessity for a separate evidentiary hearing to decide questions concerning the admissibility of evidence. That does not mean that preliminary examinations are not a type of evidentiary hearing. Rather, the preliminary examination is, in effect, the evidentiary hearing at which the district court determines whether sufficient evidence to warrant the bindover is made. [*slip opinion* at 5]

Where the admissibility of any evidence was not challenged at the preliminary examination,[15] neither party requested a separate evidentiary hearing with respect to the admissibility of any particular piece of evidence before the trial court, and the parties relied on the preliminary examination testimony, the circuit court was not required to conduct an evidentiary hearing.[16]

The trial court correctly found, on the record before it at the time of its ruling, that the search of defendant's vehicle was unconstitutional. It thereafter properly suppressed the

---

[15] The district court thus made no determination as to the exclusion or admission of any particular evidence. Indeed, it bound defendant over to the trial court simply because "it's a question of fact."

[16] The dissent states that at the preliminary examination, "defendant argued for suppression of the evidence on the basis that the police had failed to create impound cards regarding the search of the vehicle. Defendant contended that the failure to create an impound card was a violation of the inventory search policy and thus warranted suppression." That is not only untrue, the dissent appears to confuse the relevant issues, burdens of proof, and determinations in the district court at preliminary examination and those in the trial court on the motion to suppress.

evidence discovered on the third search of defendant's person because, as the search was prompted by the unconstitutional search of his vehicle, the evidence was the product or indirect result of an illegal search.

     Affirmed.

/s/ Deborah A. Servitto
/s/ Jane M. Beckering